OPINION
Defendants-appellants, James Austin Lake and Nancy Elizabeth Clay, appeal from a judgment of the Butler County Court of Common Pleas granting an easement by estoppel in favor of plaintiff-appellee, Peggy Ann Kiser, and permanently enjoining Clay from interfering with the use or maintenance of the easement. We reverse.
In 1976, Clay and her husband purchased a lot and built a home in the Hopewell Terrace subdivision in Fairfield. Because the lot was on a hillside, the Clays terraced the lot from the rear east side to the front south side to divert downhill water runoff in order to prevent erosion.
Lake, who is Clay's father, purchased the lot adjoining the terraced side of Clay's lot in 1978. Lake built an "underground" home, where the front of the house was exposed but the rest of the house was built into the hillside. Lake's house had concrete "wing walls" extending from each front corner for erosion control purposes. The left side of Lake's house (facing the house from the street) was adjacent to the terraced area of Clay's lot. The right side of Lake's lot was rocky and unexcavated.
Lake suffered a stroke in 1982. His health declined and he was confined to a wheelchair. In 1990, Lake listed his house for sale with Sibcy Cline, Inc. John and Tonya McQueary were shown the house by a real estate agent, with Lake's daughter, Sonya Hahn, present at the showing.[1] Kiser, John McQueary's mother, purchased the home for the McQuearys but never saw it herself.
Clay observed the McQuearys attempting to trim some shrubs on the slope leading from the terraced area to Clay's driveway. Apparently a dispute arose between the McQuearys and Clay as to the common boundary between the two homes. It was determined that the terraced area was on Clay's property, and Clay ordered the McQuearys to stay off the terrace.
Kiser filed suit against Clay, Lake, Hahn, Sibcy Cline and the real estate agents involved in the sale, alleging breach of contract, negligent misrepresentation, fraudulent misrepresentation, negligence, and claiming an easement of necessity over Clay's property. Clay was dismissed from the suit on all counts except that alleging an easement. The trial court bifurcated the action with the issue of an alleged easement being heard first in a bench trial.[2]
The trial court determined that the terraced area of Clay's property was subject to an easement by estoppel in favor of Lake, which passed to Kiser as Lake's grantee. The court issued a permanent injunction against Clay's interference with the use or maintenance of the easement. Clay and Lake appeal from the trial court's judgment. Clay raises the following assignments of error:
Assignment of Error No. 1:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT (CLAY) IN GRANTING THE PLAINTIFF AN IMPLIED EASEMENT BY ESTOPPEL OVER THE PROPERTY OF CLAY AS THERE WAS NEITHER PROOF NOR A FINDING OF RECIPROCITY.
Assignment of Error No. 2:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT APPELLANT (CLAY) IN FINDING THAT CLAY COMMITTED A FRAUD UPON LAKE OR UPON THE PLAINTIFF-APPELLEE.
Assignment of Error No. 3:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT DEFENDANT (CLAY) IN IMPOSING AN EASEMENT ON CLAY'S PROPERTY WHEN THERE IS ANOTHER MEANS OF ACCESS OR WHERE THE PLAINTIFF APPELLEE CAN, BY MAINTAINING AND IMPROVING HER OWN PROPERTY, PROVIDE SUCH ACCESS.
Assignment of Error No. 4:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT APPELLANT (CLAY) IN PERMANENTLY RESTRAINING AND ENJOINING HER FROM MAINTAINING AND USING THE AREA OF HER LAND OVER WHICH THE EASEMENT BY ESTOPPEL WAS GRANTED.
Lake's assignments of error are as follows:
Assignment of Error No. 1:
 THE TRIAL COURT COMMITTED PLAIN ERROR WHEN IT ADOPTED AN ERRONEOUS FINDING OF FACT THAT THE EXCAVATOR, GREG SKINNER, CONSTRUCTED A PATHWAY ON THE LAKE PROPERTY.
Assignment of Error No. 2:
 THE TRIAL COURT COMMITTED PLAIN ERROR TO THE PREJUDICE OF THE DEFENDANT APPELLANT (LAKE) BY ITS FAILURE TO ADOPT A SPECIFIC FINDING OF FACT THAT THE PLAINTIFF-APPELLEE KISER FAILED TO MAKE AN INSPECTION OF THE PROPERTY BEFORE SHE PURCHASED IT FROM LAKE[.]
We will address Clay's assignments of error first and out of their original order. Clay argues in her second assignment of error that there is no evidence that Clay and Lake had an agreement concerning Lake's use of the terrace and no evidence of misrepresentation by silence on Clay's part. The trial court concluded, however, that Clay's silence during the construction of Lake's home misled Lake into the belief that he could use the terrace as a pathway, so that Lake located and constructed his home in reliance on that belief.
A trial court's findings will not be reversed on appeal if there is competent, credible evidence going to all the essential elements of a case. C.E. Morris Co. v. Foley Constr. Co. (1978),54 Ohio St.2d 279.
A party seeking to establish the existence of an easement by estoppel must establish: (1) misrepresentation or fraudulent failure to speak, and (2) reasonable detrimental reliance. Maloney v. Patterson (1989), 63 Ohio App.3d 405, 410 (citation omitted). Courts are generally reluctant to find an easement by estoppel on the basis of passive acquiesence. Id. In some cases, however, equity may impose a duty to disclose information regarding the existence of an easement, such as in a case where the alleged servient owner stands by while the claimant performs improvements to the servient estate. Id.
Determining what constitutes reliance depends on the circumstances of each particular case. Improving the dominant estate in order to take advantage of the alleged easement has been held to satisfy the reliance requirement. Id.
Clay testified that she and her father never discussed the placement of his house or had an agreement as to Lake's use of the terrace. Clay stated that Lake "very seldom" went to the top of his house and that she never saw Lake or anyone other than her son do anything to the grass on top of the house. Clay testified that she sent her son over at times to do some weed whacking around the air conditioner and chimney on top of Lake's house.
Neighbors Elmer and Penny Garrett, who moved in after Lake's stroke, testified that they never saw Lake on the roof, but did see Bob Hahn up there "a couple of times" while the Hahns were living with Lake. Penny Garrett said she saw visiting relatives and children use the terrace.
Sonya Hahn testified that she saw Lake on top of his home prior to his stroke and that he would use both sides of the property for access. Hahn stated that she had been up there "not many times" and would use both sides.
Concerning Lake's placement of the house, the survey plat contained in the record shows that the front width of the Lake lot is one hundred feet. Lake's house is shown as being eighty feet wide. The distance from the front corner of Lake's house to the Clay lot line is approximately eleven and one-half feet, making the distance from the other front corner of Lake's house to that lot line approximately eight and one-half feet. Thus, the house is actually farther from Clay's property line than from the opposite property line. Even with the concrete "wing walls" in place, the record indicates that there is 2.28 feet to the property line on the Clay side of Lake's house and 4.3 feet on the other side.
After reviewing the record, we find insufficient evidence that Clay conducted herself in a manner that could be construed to have misled Lake. Nor do we find from the evidence that the second element of an easement by estoppel, justifiable detrimental reliance, was present. See Maloney,63 Ohio App.3d at 410. Clay's second assignment of error is sustained.
In her first assignment of error, Clay argues that because Kiser failed to show reciprocal use of the terraced area which was of mutual benefit to Clay and Lake, Lake merely had a revocable license to access his roof via Clay's terraced property.
An easement by estoppel may also exist in a boundary strip passageway partly on each owner's premises where there is reciprocal use by the adjoining owners for a long period of time. Monroe Bowling Lanes v. Woodsfield Livestock Sales (1969),17 Ohio App.2d 146, 150. The Monroe court found that where the plaintiff used the defendant's water line to supply the plaintiff's separately metered water, and the defendant used the plaintiff's parking lot for attendees at the defendant's weekly auction sales, there was reciprocal use analagous to that of adjoining owners of a boundry strip, creating an easement by estoppel in favor of the plaintiff's connection to the defendant's water line.
In this case, the survey plat shows the terraced area as being on Clay's property and not located as a boundary strip partly on Clay's and Lake's premises. In addition, although there was testimony that various people used the terraced area to access the rear grassy "roof" area of Lake's property, Clay testified that the terracing was done prior to the construction of Lake's house.
Greg Skinner, Lake's excavator, could not remember what Clay's lot looked like when he began Lake's excavation, but did state that the left side (of Lake's lot adjoining Clay's property) was "the only access we had to get around the foundation." Skinner indicated that "the other side was left pretty much like it is [unexcavated], except for where we excavated out for the driveway * * *." Skinner stated that he may have cut out enough on the left side to widen the area to allow equipment to get around to the top during the construction, but that he did not construct a pathway.
The facts in this case do not support the existence of an easement by estoppel based on reciprocity. See Monroe,17 Ohio App.2d at 150. Clay's first assignment of error is sustained.
We conclude that there is insufficient evidence to support the trial court's conclusion that Lake obtained an easement by estoppel over a portion of Clay's property. Accordingly, the judgment of the trial court is reversed and vacated. Clay's third and fourth assignments of error are rendered moot by our disposition of the first and second assignments. Lake's two assignments of error are also rendered moot by our finding against the existence of an easement by estoppel.
Judgment reversed.
POWELL, J., concurs.
YOUNG, P.J., dissents.
[1] Sonya Hahn and her husband Bob lived with Lake for approximately ten months during 1989-1990.
[2] Defendants Sibcy Cline, Inc., Mary Sheppard, and Donna Pierson are not parties to this appeal.